## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BOARD OF TRUSTEES of the PLUMBERS & PIPEFITTERS LOCAL NO. 172 WELFARE FUND, *et al*., | ) ) ) ) |
|     Plaintiffs, | ) ) |
|     v. | )      CAUSE NO.: 2:09-CV-414-TLS ) |
| MATRIX PLUMBING AND HEATING, INC., MKH MECHANICAL, INC., JOSEPH LASKOWSKI, and MATTHEW KEENON HELMS, | ) ) ) ) ) |
|     Defendants. | ) ) |

## THIRD AMENDED OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment [ECF No. 39] filed

by the Plaintiffs.[1] The Plaintiffs seek summary judgment against all the Defendants, Matrix

Plumbing and Heating Inc. (Matrix), MKH Mechanical Inc. (MKH), Joseph Laskowski, and

Matthew Keenon Helms, for damages from an alleged breach of contract, namely promises in a

collective bargaining agreement to make specified contributions to the funds the Plaintiffs

represent. The Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. § 1132, and

Labor Management Relations Act, *see* 29 U.S.C. § 185, govern this dispute.

---

[1] The Plaintiffs are the Board of Trustees of the Plumbers & Pipefitters Local No. 172 Welfare Fund, the Board of Trustees of the Plumbers & Pipefitters Local No. 172 Pension Fund, the Board of Trustees of the Plumbers & Pipefitters Local No. 172 Apprenticeship and Journeyman Training Fund, the Board of Trustees of the Plumbers & Pipefitters Local No. 172 Equality and Stabilization Fund, the Board of Trustees of the Plumbers & Pipefitters Local No. 172 Voluntary 401(K) Fund, the Labor Management Committee, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada Local Union No. 172 of South Bend Indiana, and the Industry Advancement Fund.

## PROCEDURAL BACKGROUND

The Plaintiffs filed a Motion for Summary Judgment [ECF No. 39] on March 23, 2011. A status conference was held before the Magistrate Judge on April 20, 2011, during which the Magistrate set deadlines for responses to be filed by the Defendants. On June 14, 2011, the Plaintiffs filed an Emergency Motion for Temporary and Preliminary Injunctive Relief [ECF No. 46] to prevent MKH and Helms from liquidating assets. On June 21, the Court held a telephone status conference with the parties during which MKH and Helms agreed to not liquidate MKH's significant assets pending the resolution of this case. On June 22, the Court entered an Order [ECF No. 57] staying the transfer of MKH's significant assets. On June 30, 2011, Laskowski filed his Response [ECF No. 58]. Matrix, MKH, and Helms have not responded. On July 11, 2011, the Plaintiffs filed a Reply [ECF No. 59] to Laskowski's Response. On December 29, 2011, the Plaintiffs filed a Motion for a Status Hearing [ECF No. 60] which is currently pending before the Court and will be granted.

Laskowski was warned by the Magistrate Judge that Matrix and MKH must be represented by attorneys. (Order Mot. Withdraw Counsel 2, ECF No. 43.) *See Osborn v. President, Dirs. & Co. of Bank of U.S.*, 22 U.S. 738, 830 (1824) ("A corporation, it is true, can appear only by attorney, while a natural person may appear for himself.") (J. Marshall); *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857 (7th Cir. 2011) ("[C]orporations must appear by counsel or not at all.") (quoting *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir.1985)). Nevertheless, Laskowski entitled his filing "Defendant Matrix Plumbing and Heating Inc. Response to Motion for Entry of Summary Judgment." Because corporations may only be represented by counsel the Court will construe the Response filed pro se by Laskowski as

a filing made only on his own behalf. The Plaintiffs request that the Court disregard Laskowski's filing entirely, not just as to Matrix, but as to himself as well because, they assert, it was made in violation of the Federal and Local Rules of Civil Procedure. Under the less stringent standards applied to pro se filings, the Court will consider Laskowski's filing as made properly on his own behalf despite some procedural shortcomings, including the indication that it was submitted on behalf of Matrix. *See Philos Techs.*, 645 F.3d at 858 ("It has long been established that pro se filings are held to 'less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Although Laskowski raises some factual contentions with the evidence presented by the Plaintiffs, none are material to the dispute and the Court will grant summary judgment in favor of the Plaintiffs.

## FACTUAL BACKGROUND

In July 2007, Matrix, owned and operated by Laskowski, entered into a Subscription Agreement whereby it agreed to be bound by the provisions of the Collective Bargaining Agreement (CBA) with the Plaintiffs for the period July 20, 2007, through May 30, 2010. The Subscription Agreement required payments that Matrix failed to make. In September 2008, the Plaintiffs filed suit in Case No. 2:08-CV-257 before Judge Joseph S. Van Bokkelen, United States District Court Northern District of Indiana, to enforce the contract. On January 29, 2009, the court, acting through Judge Van Bokkelen, entered a Final Judgment and Order in favor of the Plaintiffs in the amount of $138,750.32 for unpaid contributions, liquidated damages, interest, and attorney's fees accrued through December 2008. Final Judgment Order ¶ 1, *Bd. of Trs. of the Plumbers & Pipefitters Welfare Fund v. Matrix Plumbing & Heating Inc.*, Case No.

3

2:08-CV-257 (N.D. Ind. Jan. 29, 2009), ECF No. 19.[2] In that order, the Court determined that "MATRIX is bound by the provisions of the Collective Bargaining Agreement for the remainder of the Collective Bargaining term." *Id.* ¶ 2. In February 2009 Matrix owed approximately $257,000 to various creditors including debts owed to the Plaintiffs.

On February 9, 2009, Laskowski and Helms signed the Asset Purchase Agreement, effective March 1, 2009, transferring the assets of Matrix to Helms for a promise to pay $35,000 within one year. Helms incorporated MKH on March 13, 2009, giving himself all shares in the corporation and infusing no capital. In July 2009, Helms paid Laskowski $35,000 with a check drawn from MKH's account. Neither Laskowski nor Helms consulted with a valuation expert to assist in determining a fair value for Matrix's assets before the sale. Helms was employed as the Project Manager of Matrix before he purchased its assets. The Plaintiffs estimate the value of Matrix's assets, in the form of accounts receivable, jobs completed, vehicles, tools, and equipment, was "in excess of $60,000." (Pls.' Mem. Supp. Mot. Summ. J. 24, ECF No. 40.) Laskowski disputes this valuation asserting that $35,000 was a fair price for Matrix's assets. (Laskowski Resp. 4–5, ECF No. 58.)

Helms's purchase of Matrix assets included the use of the company's name, its phone and fax numbers, its customer list, its accounts receivables, its office furniture, and its vehicles. MKH continued operating under the Matrix name, out of Matrix's former office building, and with many of the same employees, including Laskowski. The Purchase Agreements states that "MATTHEW HELMS WILL NOT ASSUME ANY LIABILITIES, EXCEPT FOR FERGUSON

---

[2] The Plaintiffs also placed this document in the record for this case. (Final Judgment Order, ECF No. 40-9.)

SUPPLY FOR THE OPEN JOBS WHEN AND IF ACCOUNTS RECEIVABLE ARE

COLLECTED FOR ANY PAYABLE DUE TO FERGUSON; AND THE LIEN FOR THE

MICROTEL JOB; AND G.W. BERKHEMIER PAYABLES FOR THE NANATORIUM JOB."

(Asset Purchase Agreement, ECF No. 40-15.) MKH did not make payments owed to the

Plaintiffs by Matrix and acted as though the CBA signed between Matrix and the Plaintiffs did

not apply to its operations.


## LEGAL STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so

long as no rational fact finder could return a verdict in favor of the party opposing the motion.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the

weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

matter, but instead to determine whether there is a genuine issue of triable fact. *Id.* at 249–50;

*Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). A material fact must be outcome determinative under the governing law. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Id*.

## ANALYSIS

The Plaintiffs seek a finding of joint and several liability on the part all four Defendants for the unpaid liabilities accruing from the CBA and the Court's prior judgment against Matrix. The Plaintiffs argue that MKH, Laskowski, and Helms abused the corporate form to avoid Matrix's debts to the Plaintiffs and should therefore all be liable for those debts on the basis of alter ego liability. The Plaintiffs present several legal theories to support this outcome. Because the Plaintiffs have presented sufficient facts to establish the liability of MKH on the basis of being the successor to Matrix and on the part of Laskowski and Helms on the basis of being alter egos of Matrix and MKH, the Court will not reach the issue of fraudulent conveyance or other legal theories presented by the Plaintiffs.

## A.    Successor Liability

The Plaintiffs argue that MKH is liable for Matrix's debts as a successor. "[S]uccessor

entities can be liable for multiemployer pension contributions if (1) there is sufficient continuity between the two companies and (2) the successor company had notice of the predecessor's liability." *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998) (also providing that federal common law preempts state law on this issue in the ERISA context). The facts supporting a sufficient continuity of operations between MKH and Matrix are well established and uncontested. MKH and Matrix used the same business name, operated out of the same office building, were managed by the same group of people, employed many of the same individuals, served the same customers, and used the same equipment and licences. Notice on the part of Helms and MKH, through Helms, of the debts owed to the Plaintiffs can reasonably be inferred from Helm's role as Project Manager at Matrix prior to the asset transfer. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir.1990) ("Notice can be proven not only by pointing to facts that conclusively demonstrate actual knowledge, but also by presenting evidence that allows the fact finder to imply knowledge from the circumstances."); *Trs. of NECA-IBEW Pension Ben. Trust Fund v. Springman*, Case No. 07-cv-0600-MJR, 2009 WL 1089549 at *4 (S.D. Ill. April 22, 2009). Helms does not, through citation to particular parts of materials in the record, offer any evidence to dispute this inference. *See* Fed. R. Civ. P. 56(c) (setting forth procedures for asserting that a fact is genuinely disputed). Accordingly, the Court finds that MKH was a successor to Matrix with notice of Matrix's debts to the Plaintiffs. *See* Fed. R. Civ. P. 56(e) (allowing a court to consider a fact undisputed for purposes of summary judgment where a party fails to properly address another party's assertion of fact as required by Rule 56(c)). On that basis, the Court will enter summary judgment against MKH.

7

**B.      Alter Ego Liability**

The Plaintiffs seek liability on the part of MKH, Laskowski, and Helms for Matrix's

obligations through a finding that each was an alter ego of Matrix.[3] The determination of whether

an individual or a corporation is the alter ego of another "focuses on the existence of a disguised

continuance of a former business entity or an attempt to avoid the obligations of a collective

bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating*

*Eng'rs, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir.1987) (citations and

quotation marks omitted); *see also Cent. States, Se. & Sw. Areas Pension Fund v. John Clark*

*Trucking & Rigging Co.*, No. 05 C 0948, 2009 WL 780455, at * 7 (N.D. Ill. March 19, 2009).

"[U]nlawful motive or intent are critical inquiries in an alter ego analysis." *Centor Contractors*,

831 F.2d at 1312 (quotation marks omitted). In this analysis, "[t]he factors a court should

consider are 1) the amount of respect given to the separate identity of the corporation by its

shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited

on the litigants by respecting the corporate entity." *Cent. States, Se. & Sw. Areas Pension Fund v.*

*Cent. Transp.*, 85 F.3d 1282, 1287 (7th Cir. 1996) (citing *Lumpkin v. Envirodyne Indus.*, 933

---

[3] The Plaintiffs proceed under federal law rather than state law because they seek direct liability under an alter ego analysis rather than vicarious liability under a traditional veil piercing analysis. *See Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000) ("[A] contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct.") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 492 (1996)); *Cent. States, Se. & Sw. Areas Pension Fund v. Denny* 250 F. Supp. 2d 948, 955 (N.D. Ill. 2003) ("[A] vicarious liability claim falls under state common law and is preempted by ERISA, while a direct liability claim under ERISA is a federal question.") (citing *Elite Erectors*, 212 F.3d at 1038). "An individual corporate officer may be liable under ERISA if that officer is an alter ego of the employer." *Cent. Ill. Carpenters Health & Welfare Trust Fund v. S & S*, No. 05-1094, 2009 WL 1064914, at *2 (C.D. Ill. April 20, 2009) (citing *Elite Erectors*).

F.2d 449, 461 (7th Cir. 1991)); *see also Trs. of Sheet Metal v. Pekin Climate Control*, 669 F. Supp. 2d 924, 928 (C.D. Ill. 2009).

For Helms, the Plaintiffs have provided evidence supporting the relevant factors and, as he has failed to respond, this evidence remains uncontested. The first factor, lack of respect for the corporate entity is demonstrated by Helms's decision to initially take on Matrix's assets and continued operation through the Asset Purchase Agreement in his own name. Helms did not incorporate MKH until March 13, 2009, almost two weeks after personally taking on Matrix's assets under the terms of the Asset Purchase Agreement on March 1. Similarly, Helm's decision to add no capital to the enterprise and to "pay" for it essentially out of Matrix's operations support both the lack of separate identity between the corporation and Helms and an inference that he intended to defraud. If the Court allowed Helms to avoid liability to the Plaintiffs after taking on Matrix's assets and continuing its operations under the same name with the same management, clients, and even partially completed jobs without paying anything for the company, then the Court would be sanctioning an injustice worked through an abuse of the corporate form and a sham transfer of assets. The Court finds Helms personally liable for Matrix's obligations to the Plaintiffs as an alter ego of Matrix. The Court notes that, were MKH not liable as a successor for Matrix's debts, it would be liable under an alter ego analysis following closely on the analysis provided above for Helms.

Finally, the Court will consider Laskowski's liability paying particular attention to the factual contentions raised by Laskowski in his Response. Laskowski raises the following contentions with the Plaintiffs' arguments: the sale of Matrix was not a sham but was undertaken because he did not want to continue operating the business; management of Matrix was changed

and its ownership was changed upon the sale evidencing that it was not a sham and not based on any fraudulent motive; he did not state in his deposition that he sold Matrix in order to escape his contractual obligations to the Plaintiffs, rather he stated that he no longer had sufficient funds to continue the business; he "sold Matrix because [he] wanted out of business and [he] was under the understanding that you can sell assets due to insolvency" (Laskowski Resp. 5, ECF No. 58); he used the $35,000 received from MKH for Matrix to pay towards Matrix's debts namely "Indiana Department of Revenue $20,000.00, the IRS $10,000.00 and personal taxes $5000.00" (*Id*. at 3); he contests the estimated value of Matrix's assets at the time the Asset Purchase Agreement was signed and asserts it was closer to the $35,000 agreed to; he did not have a managerial role at MKH after the sale, rather, he became the Purchasing Agent.

Laskowski's contentions do not raise an issue of material fact capable of preventing summary judgment against him. With regard to the first factor in the alter ego analysis, lack of respect for the corporate entity, admissions within Laskowski's own contentions weigh against him. Specifically he admits to using some of the money MKH paid for Matrix to pay down a personal tax liability and admits that he "believes" MKH or Helms used "funds . . . from a Canterbury job draw" to pay for the company. (Laskowski Resp. 3) The payment by MKH from Matrix's continued operations indicates that Helms paid nothing for Matrix and that Laskowski, facing insolvency, transferred the bulk of Matrix's assets to an employee who did not pay for them, took $5,000 to pay personal taxes, and used $20,000 to pay some of the company's debts. Laskowski also states, at the end of his Response that he "pray[s] the Court will sort this matter out and award the Plaintiff[s] the $33,512.00 that I owe for the CBA employees Union Contribution Reports through July 2008 and be able to work out a mutually agreed payment

10

plan." (*Id.* at 9.) His belief that he is personally liable for debts owed to the Plaintiffs by Matrix, a now apparently defunct corporate entity, further indicates a lack of separation between himself and Matrix.[4] Finally, the Asset Purchase Agreement states "THIS AGREEMENT IS BETWEEN JOSEPH LASKOWSKI, SELLER OF MATRIX PLUMBING AND HEATING, INC'S ASSETS AND MATTHEW HELMS BUYER." (Asset Purchase Agreement, ECF No. 40-15.) The document is signed "Joe Laskowski, Seller." (*Id.*) The sale of assets by a corporation must be undertaken by the corporation itself. *See SFN Shareholders Grantor Trust v. Ind. Dep't of State Revenue*, 603 N.E.2d 194, 198 (Ind. Tax 1992) ("Because of separate identity, shareholders simply are unable to sell corporate assets; they can sell only their shares.") The document's terms and Laskowski's decision to sign his own name as "seller" rather than in an official capacity as owner or president of Matrix indicates that he, rather than Matrix, was selling the company's assets and that he, rather than Matrix, should receive payment for those assets. These undisputed actions demonstrate his disregard of the corporate form.

With regard to the second factor, fraudulent intent, Laskowski's actions that failed to distinguish between himself and Matrix, particularly taking payment for the corporation's assets personally and paying down personal tax liability with that payment, also provide some indirect evidence of Laskowski's fraudulent intent. His own statements during his deposition are somewhat contradictory on the issue of fraudulent intent and may support his claim that he sought to sell the business for a legitimate business purpose, namely his desire to get out of his

---

[4] Laskowski signed the Subscription Agreement with the Plaintiffs as a "duly authorized agent of Matrix Plumbing & Heating" giving his title as "Owner." (Subscription Agreement, ECF No. 40-4.)

role as owner and operator of the business.[5] That Laskowski stated under oath that he wanted to get out of the business and did not intend this transaction to avoid Matrix's debts to the Plaintiffs is not a sufficient business explanation to overcome the inference of fraudulent intent drawn by the Plaintiffs from the undisputed facts before the Court. Laskowski's decision to remain with MKH after the asset transfer, continuing Matrix's same business, even if, as he claims, he held a less managerial role, also draws into question his asserted desire to get out of the business.

More important, however, to the Court's finding of fraudulent intent is the undisputed time line of events leading up to the asset transfer, the factual context surrounding the transfer, and the continued operations of Matrix's business after the transfer. *See Springman*, 2009 WL 1089549 at *6 (making a finding of fraudulent intent under an ERISA alter ego analysis relying in part on a suspicious time line of events). Matrix failed to make payments due to the Plaintiffs

---

[5] The Plaintiffs assert that Laskowski admitted that he entered into the Asset Purchase Agreement specifically to avoid liabilities to them pointing to the following portion of his deposition:

Q: . . . Now I'd like to discuss what you call the closing down of Matrix. When did this approximately occur? A: Started winding down in December. Q: Why? A: I saw – I saw no positive way of doing business. Q: What do you mean by that? Was there something in the way? A: You. Q: When you say 'you,' you're referring to – A: The Local 172. I couldn't afford – I didn't have the income to maintain it.

(Laskowski Dep. 24, ECF No. 40-12.) Laskowski asserts that he consistently provided legitimate business reasons for shutting down, he points to the following portion of his deposition among others:

Q: When you say you saw no positive way of doing business with these amounts, if these amounts weren't due, do you think Matrix could still be in operation? A: That's hard to say. I personally didn't want to continue on. Q: With the union obligations? A: With business in general. Q: But you didn't want to continue if you had to continue to contribute to the Local 172? A: I didn't want to continue at all. I was fed up with the whole contracting business.

(*Id*. 66–67.) The Court does not find in these statements, when viewed in the light most favorable to Laskowski, proof of his fraudulent intent. *See Springman*, 2009 WL 1089549 at *6 (making a finding of fraudulent intent under an ERISA alter ego analysis where a defendant "explicitly admitted that part of the reason that he shut down his business was that he owed contributions to the Funds.") However, these statements are not sufficient to establish a material question of fact for trial with respect to Laskowski's intent because they do not provide an explanation for the actions he took that indicate an intent to defraud.

between April and December 2008. On January 29, 2009, the Court entered judgment against Matrix and in favor of the Plaintiffs in the amount of $138,750.32. On February 9, 2009, Helms and Laskowski entered into the Asset Purchase Agreement transferring Matrix's assets to Helms and providing that Helms would not assume Matrix's liabilities. On March 13, 2009, Laskowski was personally served with a notice to appear for a debtors' examination of Matrix. On the same day Helms incorporated MKH which began operating under the name Matrix Heating and Plumbing and essentially continuing Matrix's operations. Laskowski does not dispute these events or their sequence except that he asserts Helms first approached him to discuss buying Matrix's assets "around late fall or winter of 2008." (Laskowski Resp. 8.) He also admits that he knew he was behind on payments to the Plaintiffs and other creditors and that in this context he "met with key employees on several occasions and expressed my concern for my health and that Matrix would have to cease operations." (*Id*.) Although his statements expand the time line they also provide some additional support for the Plaintiffs' contention that Helms purchased the assets so Matrix could continue to operate without making further payment to the Plaintiffs.

The structure of the transaction, the specifics of which are undisputed by Laskowski, supports a finding that Laskowski intended to defraud the Plaintiffs. Laskowski disputes the values estimated by the Plaintiffs for various assets described in the Asset Purchase Agreement and argues that $35,000 was a fair price for the company. However, the Court finds that Helms and MKH paid nothing for Matrix's assets making moot any determination of whether the Plaintiffs or Laskowski's valuations are correct or whether $35,000 may have been a fair price for the totality. Helms paid nothing at the time he "purchased" Matrix's assets and infused no capital into MKH at the time he incorporated. Rather, in July 2009, MKH paid $35,000 out of

13

income derived from the continuation of the Matrix business in its new corporate form. Laskowski received this money in his personal capacity and used it to pay down both corporate and personal debts. In light of the suspicious time line of events surrounding the asset transfer and the form of that transfer, the Court finds that Laskowski acted with intent to defraud the Plaintiffs. Laskowski's repeated statements of the legitimate business purpose of this transaction in his Response do not explain the time line or the form of the transfer or provide any evidence, beyond his own assertion that he wanted to leave the business, that a legitimate purpose, rather than a desire to avoid debts owed to the Plaintiffs, explains the evidence presented by Plaintiffs in favor of a finding of fraudulent intent.

With regard to the third factor, the Court finds that respecting the corporate form in this case would work an injustice against the Plaintiffs. Laskowski's statement that he should be found liable for a lesser amount owed by Matrix to the Plaintiffs than that determined in Judge Van Bokkelen's Order appears to concede this point. If Laskowski believed the corporate form should be respected then no judgment should be entered against him as he signed the CBA in an official capacity as owner of Matrix. His admission of some personal liability, then, is a recognition that the Plaintiffs would be wrongly disadvantaged if the Court respected the corporate form in this case. The Court will enter summary judgment in favor of the Plaintiffs against Laskowski as an alter ego of Matrix.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Plaintiffs' Motion for Summary Judgment [ECF No. 39] only as to the issue of liability. The Court further ORDERS Helms and

14

MKH to submit to a payroll compliance audit and provide the Plaintiffs with all documents

necessary to complete that audit for the time period beginning January 1, 2009, to the present.[6]

These documents should include payroll journals of MKH; individual earnings and time records

on all employees of MKH; quarterly withholding tax and PICA tax returns (Forms 941) and

annual earnings reports (Forms W-2 and W-3) of MKH; report of miscellaneous income

payments (Forms 1099) of MKH; summary of information returns (Form 1096) of MKH; state

Unemployment Compensation tax reports of MKH; employer copies of monthly contribution

reports to all Funds submitted by MKH; all pertinent personnel file information of MKH; and

cash disbursement records of MKH. Helms and MKH SHALL COMPLY with this Order within

14 days of receiving service. The Court CONFIRMS a Telephonic Status Conference in this case

to be held April 12, 2012, at 3:00PM before Judge Theresa L. Springmann. The Court will

initiate the call.

---

[6] The Court initially granted the Plaintiffs' Motion to Amend Judgment [ECF No. 71] to permit access to documents only for the time period of January 1, 2009, through May 30, 2010. (Order, ECF No. 73.) In its Order, the Court granted leave to the Plaintiffs to provide additional support for the contention that they are entitled to documents covering a longer time period. The Plaintiffs, in the Motion to Amend Second Amended Opinion and Order [ECF No. 74], indicated to the Court their basis for requesting these documents. As explained in the Plaintiffs' Motion, the CBA contained an "evergreen clause" that bound Matrix to the subsequent CBA unless Matrix gave proper notice of termination of the contract at least 60 days prior to the date set for the opening of negotiations on the new CBA. (CBA 40, ECF No. 40-5.) The Plaintiffs argue, without objection from the Defendants, that this time passed without any of the Defendants giving such notice to the relevant parties. The Plaintiffs further indicate, again without objection by the Defendants, that negotiations for the new CBA began January 3, 2011, and that the new CBA, attached by the Plaintiffs to the Motion to Amend Second Amended Opinion and Order, is effective May 31, 2010, through July 2, 2013. (CBA, ECF No. 75-1.) "A contract containing an evergreen clause binds an employer to subsequent CBAs until the contract is properly terminated." *Masonry Inst. v. Estate of McNeela*, 1995 WL 578187, at *2 (7th Cir. Sept. 29, 1995) (collecting citations); *see Cent. States v. Sara Lee Bakery Grp.*, 660 F. Supp. 2d 900, 917 (N.D. Ill. 2009) (citing *Cent. States v. Gerber Truck Serv.*, 870 F.2d 1148, 1156 (7th Cir. 1989)). Such clauses can be enforced as against successor and alter ego entities. *Anderson v. Liles,* 774 F. Supp. 2d 902, 906–07, 909–10 (N.D. Ill. 2001). The Court, therefore, grants access to documents covering the entire time period sought by the Plaintiffs.

SO ORDERED on March 28, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION